Good morning, your honors. My name is Danilo Becerra. I was one of the trial counsels in this case, and actually it's the second time this case has been up here. The original opinion in this case, the key issue was color of law. The district court originally felt we didn't establish color of law, and then a panel of this court reversed that. We're now here, having had a jury decide the case, and we would argue in a somewhat confused state based upon the court's comments, because the law here, I mean, this case basically was what is commonly referred to as a road rage, which unfortunately many of us have had the situation where someone cuts someone off, and we've seen it, and then they follow each other down the road. That's what this case basically was in its inception. It turned into a shooting by an off-duty law enforcement officer with serious, serious brain injuries to the plaintiff, Mr. Mendez, and, of course, his family has been affected by that. On the jury instruction, the response the judge gave to the jurors' questions, are you quoted correctly? I don't know if you're the one. It was court counsel, Your Honor. I would defer it and see how they respond, see if that takes care of it. Is that the comment? I think that's a portion of the quote. I think there's about two. Just a minute. Is there something else in this record that adds to that statement? Yes. Yes, there is. I think after that statement, there's the, and I'm pretty sure I have it marked. Is that the statement made just before the response is made to the jury? Yes. Stick to what was said before it went to the jury. What my co-counsel said, and I was not present at that time because we were at the stage where the jury was deliberating and he was there to assist the court. What his statement was that this is confusing. We need to tell the jury about the unlawfulness. That is, it's in the transcript. I was very concerned about that. The problem is, after that, he says, okay, let's defer my concerns and see if your, the district court's response works. And he then personally hands that response to the bailiff. That's correct, Your Honor. But we have to look at it in context. From the very time that the jury went out, they were struggling with color of law. The very first question, I think there were about 20 minutes, and you'll see the question Tell me one thing. What's wrong with the instruction? Well, firstly, the, you know, unfortunately, the color of law instruction that was given is an approved O'Malley instruction. That sure is, and there was no objection to it. Which is worthless. Okay. And there was no objection to it. There was a, the issue as to whether prior counsel who had submitted that instruction was then bound by that submission. So. Well, there was no objection to the instruction, was there? There was a concern expressed to the court, and there was an attempt to get the court What part of objection is uncertain? I understand you were, the concern. My question is, was there an objection? Okay. There's not a specific objection to that instruction. So, so, then you get to the point of the jury asking a question about it. Okay. And, and then the jury's question, wanting to know, okay, is color of law, okay, is the color of law instruction just pertaining to color of law in verdict form question one, or does it also pertain to verdict question two, which, which deals with excessive force? And the answer is plain it does not. It plainly applies to question one. No, I, respectfully, Your Honor. So, so why, why is that wrong? Respectfully, Your Honor, I think that in order for a juror to, and I think the law is that you have to look at the quality of the act of the actor in order to determine whether he's acting color of law. See, the jury could have looked at, with, with the court's direction, the jury could have looked at color of law in a situation where any motorist or driver is driving down the road, and he's confronted with someone who's being unreasonable or this so-called road rage. Okay. That would not, obviously, if it, if it were the court or me or, or Moreno, that's not a color of law situation. In order to put color of law in its proper context, and I think the cases do a good job of, of, of talking about that, you have to look at the nature of the act that could only be performed because of the ability of this officer. And the ability of this officer, his training, he's using a service firearm, he's, he's got a badge. In his deposition, he even testified that when he fired on that last occasion, he held his badge and his gun, and he fired at the vehicle as it fled the scene. Okay, if that's not color of law, the, the, the only evidence that this wasn't under color of law. Now we're talking weight of the evidence. Well, okay, I'm sorry, I'm sorry. What, what I'm saying is, I think that the court's comment was, failed to answer the jury questions, and I think it misled them. I took, I think it took them down a wrong path. And that path was, don't look at the nature of the act, okay, and just look at whether this, in the abstract, is color of law. And, and the cases don't do that, and it's clear that the law doesn't do that. And, and they, they literally analyzed Defendant Gray's conduct as a, as a private citizen, and, and not, not truly as a law enforcement officer using his authority to display his badge and fire at a car that was fleeing the scene. All you're saying is that they found against you. Well, it's, it's, it's, it's, it's, they found against us on one issue, which was color of law, and respectfully, Your Honor, I, I don't think there was any evidence that it wasn't under color of law. Okay, if you look at the cases, okay, I don't think there's any analogous cases to this suggesting that this is not color of law. We basically proved what we did in opposition in the summary judgment. And, and, and the panel's original decision was, this establishes color of law, and then acknowledged they amended it, they amended it. I'm sure what the panel said in denying, in, in reversing the summary judgment, was that there is a triable issue of fact as to whether there's color of law. Yes, they did. They, they amended, they amended. He goes to trial, and there is ev, the only evidence that it was under color of law is that he, after this incident had been going on for some time, and he'd be, the, the gray is being chased five or six minutes up Mountain Boulevard. It pulls out his badge and gun. And there's no evidence that Mendez or his passenger even saw it. And does nothing else that manifests conduct that a police officer would engage in, like trying to take control, pulling them over, exercising any kind of authority, or any of that stuff. Except the pulling the gun is not something that, that an average citizen can do. Carrying a concealed weapon is something unique. Well, fortunately, it doesn't happen very frequently, but he was, he was at that point after he heard something that sounded to him like a gunshot, scared for his life. So he pulls out his gun, thinking he's just been shot. Yeah, but he, he, the whole issue of sounding like a gunshot, there was a, there was a totally independent witness behind the vehicle, Brian Kelly, who I think reasonably impeached that, okay, and, and he had nothing to do with anyone. Yeah, I think it was a young man that was a college student. But the jury didn't buy that, did they? Never got there, Your Honor. Never got there. Well, they got to color of law. True, but I don't think Mr. Kelly's testimony went to color of law unless we look at the quality of the act, which is what I think that the case law says that we should do. Okay, and, and I think which, which is what the court told the, the jurors basically not to do. I think he. Don't let me use up the rest of your time now. Okay, I, I'm going to save a minute and 39 seconds for Roboto. Thank you. Okay. Ms. Miller. Good morning. May it please the Court. Elizabeth Miller of the Los Angeles County Counsel's Office on behalf of Appellant, or Appellee, I'm sorry, Brad Gray. This is a case where three judges and a jury have found that the defendant, Gray, was not acting under color of law at the time that he fired his weapon. The answer to the jury question, they were obviously on question one of the verdict form trying to determine whether he was acting under color of law. They asked a question. There was a discussion of how best to respond to that question. And the judge proposed a response which Mr. Moreno agreed with. And in fact, the only change that he ever recommended making to that response was to limit it to question number one, which is exactly the opposite of what Mr. Becerra is arguing should have been done. He's saying it should have been told that it would also apply to question two. But what Mr. Moreno argued to the Court is let's tell them that's the instruction that goes to question one. Well, obviously, that is the instruction that goes to question one. But there's an application of color of law to the other questions, and that's why the Court decided to answer it as he did. There was never a clear objection made on the record before that instruction or that answer to that question was given to the jury, and they resumed deliberations. That was a correct answer. It accurately reflected the proper response to the question, and it indicated that instruction 14 was the color of law instruction. Does it answer or does it mislead the jurors into not looking at the nature of the act as argued by your opposing counsel? Not at all, because instruction 14 says at the very beginning of the instruction that an act can be a lawful act under color of law, or it can be an act outside the person's authority, an unlawful act under color of law. And it was clear that the jury understood that. In fact, Mr. Moreno in his argument told the jury, make sure you know the color of law. That's going to be an issue. It can be an unlawful act and still be under color of law. So there was no – it did not mislead them at all. It simply clarified that that instruction 14 was, in fact, the criteria for determining color of law. Unless you have further questions, specific questions, I think that the issue has been addressed. I don't think so. Thank you very much, Mr. Chair. In answer to Your Honor, Judge Reed's comments on page 90 of the court's transcript, there was a transcript of instruction 14 that said, well, lines 17 through 25, and it goes over to lines 1 and 2, where Moreno clearly indicates that this unlawful act, because Judge Walters, he's a very honest judge, and he says, look, I can't figure out why they're asking about these unlawful acts. And after going back and forth, Moreno then goes into it and explains that we have to do something about telling about the jury about the unlawful acts. See, the real problem in this case was defense insisted that they get their color of law jury verdict form number one, and it actually – I think it wound up confusing the jury, okay? And they never really got to the main issues in the case, which were color of law, the nature of the act, and whether or not unlawful force was used. But I think if you read these sections, I mean, Moreno is saying, you know, I see where they got unlawful act. Is that figure – before you get to color of law, you've got to determine it's an unlawful act. It's – the key, as I understand it, okay, and I've read the cases a few times, probably not as many as the court, but the nature of the act is what's going to determine, not whether he's on duty or off duty. You look at the nature of the act, and here the nature of the act, it's a service weapon, which only he could be armed with in a concealed manner, and he used that with his training. He knew how to shoot. He was able to shoot at a fleeing vehicle. So if you look at this, this truly was the use of his authority. Whether or not it was excessive, I don't think we get to excessive because of the issue of the banging of the club against the lunch cart. Okay, that's another thing that kind of stopped us in that, and I don't think that was proper. There was a suggestion that Moreno banged the – Ms. Cicera, thank you. Your time has expired. Dr. Reed's question has been answered. Thank you. Yes, thank you very much. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Reed